JOSEPH B. PENNELL and Others, Appellants, *v.* CHARLES L. BUCKI, Respondent.

*Modification of the specifications of a building contract — the payment of a just debt is no consideration for a contract — right of a building contractor to withhold moneys from a sub-contractor.*

Where the engineer of a company with which a person has contracted to build an elevating railway, is at liberty to modify or amend the specifications therefor, provided that the general character of the work is not thereby altered, the work done pursuant to such modifications is not extra work.

Where there is no dispute as to the fact that one person owed another a certain sum of money, the payment of part of such sum does not constitute a consideration for an agreement, by which the creditor surrenders the right to the payment of other moneys which he claims to be due from the debtor to him.

A building contractor has no right to withhold from his sub-contractors a sum of money that is owing by such sub-contractors to other persons who participated in the work, except with their consent, and their consent that the contractor should

hold the amount is revocable, and the contractor is bound to pay the amount to the sub-contractors on demand.

A clause, in the following words, was contained in the contract between a building contractor and his sub-contractors: "It is further understood and agreed that the sub-contractors shall assume all liabilities for damages to property or to life or limb, caused by, or resulting from, the prosecution of their work."

*Held,* that until the contractor had paid some damages, caused by the prosecution of the work of the sub-contractors, he had no cause of action against them, and if he had neither paid a claim, nor been sued for any, he had no claim against the sub-contractors, and had no right to retain any money due to them, but that, in a case in which the sub-contractors might become liable to the contractor, such contingent liability was sufficient to support an agreement that the contractor should retain certain money due the sub-contractors until they had settled with a person who claimed that his property had been injured.

APPEAL by the plaintiffs, Joseph B. Pennell and others, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 3d day of November, 1892, upon the verdict of a jury, rendered by direction of the court after a trial at the Westchester Circuit, dismissing the plaintiffs' complaint upon the merits, as such judgment was amended by an order of the Supreme Court, made at the Westchester Special Term and entered in said clerk's office on the 21st day of January, 1893.

The action was brought to recover for work done by a sub-contractor, the contract for which provided, among other things, as follows:

*Third.* It is mutually understood and agreed that the said engineer may at any time vary, alter, modify or amend the plans and specifications as in his judgment may be necessary or expedient, provided such variations, alterations, modifications or amendments shall not conflict with the provisions of the said proposal of Charles L. Bucki, and specification of Otis Bros. & Co., or with the provisions of this contract.

*Joseph F. Daly,* for the appellants.

*Leopold Wallach,* for the respondent.

BROWN, P. J.:

The defendant contracted with the Otis Elevating Railway Company to construct an elevating railroad in the Catskill mountains. The plaintiffs were sub-contractors with defendant for a part of the

work. Under their contract they were to do " the clearing, grubbing, masonry and grading; also the drilling of holes for anchor bolts; in fact, all the work (except trestle, timber work and track laying) shown by drawings and specifications, and as directed by T. E. Brown, Jr.," etc., for $47,500.

This action was brought to recover a balance claimed to be due on the contract and for extra work. At the close of the testimony the court dismissed the complaint on the ground that there had been an accord and satisfaction proven between the parties.

So far as the claim for extra work is concerned we agree with the trial court that none was proven.

The plaintiffs undertook, by their contract, to do all the work that defendant had agreed to do by his contract with the company, with the exceptions already stated. It was not disputed that defendant told the plaintiffs that there must be no extra work. Defendant testified that he said that he would not pay for extra work unless he ordered it in writing. This was denied by plaintiffs, but it was conceded that he said there must be no extra work and that he never directed any to be done.

It is very clear, we think, that defendant is not in any event liable for the grading done west of the station designated O. If that work was included in defendant's contract with the company, then it was within plaintiffs' contract, and they were bound to do it. If it was not within defendant's contract then, if the plaintiffs have any claim for it, it is against some other person than defendant.

All the other work, we think, was incidental to the performance of the contract. The engineer had the right to modify or amend the specifications, and unless the general character of the work was thereby altered, work done pursuant to such modifications was not extra work.

But as to all claims for extra work the plaintiffs are concluded by the settlement.

The engineer gave his final certificate of the amount due the plaintiffs. No extra work was claimed by them, and from the amount of the engineer's certificate certain deductions were made by defendant, and the balance paid and accepted by the plaintiffs. Excepting the items deducted in that settlement, the acceptance of the final payment bars any claim for extra work.

As to the claim for the balance due on the contract, we are of the opinion that the case was for the jury.

After the plaintiffs had completed their contract and the engineer had given his final certificate, the parties met at defendant's office to effect a settlement. According to defendant's testimony, the gross amount of the plaintiffs' work was $47,492.50.

The defendant withheld $1,000 that he had paid for building a trestle over a part of the road where the original plan called for a fill; $2,650 for damages claimed to have been caused to the property of the Catskill Mountain Association, and $251.40, the amount of a bill due from plaintiffs to Mairs & Lewis, other contractors on the road. He paid to plaintiffs a check for $1,291.10, the balance due on their contract, after making such deductions, and delivered it with a letter, of which the following is a copy:

"New York, *August 14th*, 1892.

"Messrs. Pennell, O'Hern & Co., Yonkers, N. Y.:

"Gentlemen.— Enclosed I hand you a check for $1,291.10, being final payment on Otis Elevating Company's work. It is understood that I am retaining the following money under the following conditions: $1,000 which I will pay you in case I am allowed my bill for extra work on the middle trestle; $251.40 being for the bill of Mairs & Lewis for work said to have been done for you, and which, if you can agree, I will pay you unless stopped by law. Also the sum of $2,650, being for bill for use of road and damage to property of the Catskill Mountain Association, which I will pay you as soon as you deliver to me the receipt in full of the Catskill Mountain Association for any damage done to their property, and for use of such other property, as you can agree upon between yourselves.

"Yours very truly,

"CHARLES L. BUCKI."

It is the defendant's contention that this paper and the acceptance of the check constituted a compromise of disputed claims, and that it is a bar to the prosecution of this action.

We cannot concur in that view of the testimony.

The amount paid to the plaintiffs did not represent a compromise of any kind. Defendant was indebted to them in the sum of $5,192.50, and he claimed that they were liable to him in the sum

of $3,901.40. There was no dispute about the difference between these two amounts. That was due to the plaintiffs in any event, and its payment could not constitute a consideration for an agreement by which the plaintiffs surrendered the right to the payment of the balance.

The items named in the paper are not connected together, either in the paper itself or by the oral testimony. Each stands upon its own facts. The paper is evidence of an agreement only, and the utmost effect that can be claimed for it is that it tends to corroborate the defendant's testimony that an agreement was entered into with reference to the items named in it, by which plaintiffs surrendered the right to present payment upon conditions which, at the time of the commencement of this action, had not been fulfilled.

With reference to the item of $251.40, we are of the opinion that defendant was bound to pay that sum to the plaintiffs on demand. That was a claim held by Mairs & Lewis, other contractors on the road, against the plaintiffs. Defendant had nothing to do with it. He had no power to collect or withhold it for Mairs & Lewis. His sole right to retain it was the consent of the plaintiffs, and that consent, assuming it to have been given, as defendant testified, was revocable, and defendant was bound to pay it to plaintiffs on demand. For that amount, therefore, plaintiffs were entitled to a judgment in this action.

As to the other two items there was a dispute, and the question presented with reference to them was one of fact for the jury. It is unnecessary for us to refer with any particularity to the testimony. It is sufficient to say that the plaintiffs denied that they had agreed that their liability for the construction of the trestle was made dependent on the result of an action to be brought against the railway company by the defendant, and, if the jury had adopted that view, then the question whether the plaintiffs were bound under the contract with defendant to construct the trestle, or, if not, whether the contract price was subject to reduction, from the fact that the amount of their work was lessened by the construction of the trestle, and, if so, how much, were all questions that should have been determined in this action.

With reference to the other item, there was a claim against the plaintiffs of liability only, and a liability that it is apparent was con-

tingent on many facts and circumstances. The defendant had no enforcible cause of action against them for damages. The plaintiffs' contract contained the following provision:

" Sixth. It is further understood and agreed that the contractors shall assume all liabilities for damages to property or to life or limb caused by or resulting from the prosecution of .their work." And a similar provision was contained in defendant's contract with the railway company.

Until the defendant had paid some damages caused by the prosecution of the work by the plaintiffs, he had no cause of action against them. He had paid none, nor had he been sued for any. He, therefore, had no claim against the plaintiffs and no right to retain the money.

But plaintiffs might become liable to the defendant, and that contingent liability was sufficient to support an agreement that he should retain the money until plaintiffs had settled with the Mountain Association. Whether such an agreement was made or not was in dispute, and the jury should have been permitted to determine the fact.

The judgment must be reversed and a new trial granted, costs to abide the event.

PRATT, J., concurred; DYKMAN, J., not sitting.

Judgment reversed and new trial granted, costs to abide event.